STATE of Wisconsin, Plaintiff-Respondent,†

v.

Robert W. SWEAT, Defendant-Appellant.

Court of Appeals

*No. 95–1975–CR. Submitted on briefs February 12, 1996.—Decided April 4, 1996.*

(Also reported in 550 N.W.2d 709.)

†Petition to review granted.

For the defendant-appellant the cause was submitted on the brief of *Leon S. Schmidt, Jr.* of *Schmidt, Grace & Duncan* of Wisconsin Rapids.

For the plaintiff-respondent the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Maureen McGlynn Flanagan*, assistant attorney general.

Before Eich, C.J., Gartzke, P.J., and Dykman, J.

DYKMAN, J. Robert W. Sweat appeals from a judgment ordering him to pay $364,597.23 in restitution to the victims of his racketeering scheme. Sweat argues that: (1) he is entitled to offset payments made to the victims from the total amount of restitution

ordered by the trial court; (2) the victims' claims were discharged in bankruptcy; and (3) he may assert a civil six-year statute of limitations as a defense to the victims' claims. Because we conclude that the trial court erred when it refused to apply the civil six-year statute of limitations, we reverse the restitution order, remand and direct the court to hold a hearing taking this defense into consideration. We resolve the remaining issues against Sweat.

## BACKGROUND

Robert W. Sweat devised an illegal scheme in which he operated as an insurance agent and induced several individuals to give him money. He promised these individuals that he would invest their money in exchange for return rates between twelve and fifteen percent. During the 1980's, Sweat collected $364,597.23 as part of his scheme. Sweat moved to Texas in spring 1989 and filed a petition in bankruptcy in July naming the victims as creditors. In January 1990, the bankruptcy court discharged his debts.

Sweat was later apprehended and pleaded no contest to one count of racketeering, contrary to § 946.83(3), STATS. After a restitution hearing, the trial court ordered Sweat to pay $364,597.23 to the victims. In so doing, it ruled that the payments he had already made to the victims would not offset the amount that Sweat owed to his victims, that his 1990 bankruptcy discharge did not discharge these debts, and that a civil six-year statute of limitations did not apply to bar the victims' claims. Sweat appeals.

## OFFSET

Sweat first argues that the trial court should have offset the restitution order with amounts he already

paid to the victims. The trial court acknowledged that Sweat had already made payments to the victims totalling $75,119.54, but it disallowed an offset because "these were monies the victims were entitled to and would have received if the defendant had not squandered their investments." Sweat also claims an offset for services he performed for one of the victims.

The amount of restitution ordered is committed to the sound discretion of the trial court. *State v. Boffer*, 158 Wis. 2d 655, 658, 462 N.W.2d 906, 907-08 (Ct. App. 1990). We will affirm that decision if the court "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Loy v. Bunderson*, 107 Wis. 2d 400, 415, 320 N.W.2d 175, 184 (1982).

We reject Sweat's claim that the trial court acted unreasonably because there is no evidence that Sweat ever repaid any of the principal given to him by the victims. Had Sweat not deceived these victims, they would have received their principal back plus a large sum of interest. Thus, we conclude that the court acted within its discretion when it refused to offset its restitution order by the amount Sweat already paid.

Sweat also argues that the restitution order should have been offset for about 600 hours of services he claims he performed for one of the victims. Sweat, however, never billed this victim for these services when they were provided, never listed them as an asset in his bankruptcy proceedings, and drafted a bill only

after these criminal proceedings commenced.[1] Because the funds given to Sweat were not "loans," but money induced as part of a racketeering scheme, the only "service" Sweat provided to this victim was, as the State suggests, "the total dissipation of $100,000 of her assets within an eighteen-month period." Thus, the court's failure to provide an offset for these alleged services was reasonable and proper.

Sweat also complains that the State rather than several of the victims presented proof of their losses during the restitution hearing but that under § 973.20(14)(a), STATS.,[2] the burden rests on the victim, not the prosecutor, to prove the victim's claims. Section 973.20(14)(a) provides only that the prosecutor is not required to represent any victim. It does not, however, bar the prosecutor from appearing at the restitution hearing and gives the prosecutor the discretion as to whether he or she will represent the victim in securing a restitution order. Moreover, despite Sweat's hearsay objections, the trial court correctly relied upon the investigator's testimony as to the amounts claimed by the victims because the rules of evidence do not apply to restitution hearings. *State v. Pope*, 107 Wis. 2d 726, 729, 321 N.W.2d 359, 361 (Ct. App. 1982).

---

[1] Sweat claims that he did not bill this victim before the criminal proceedings began because he did not want her to be brought into the bankruptcy case and held liable to him.

[2] Section 973.20(14)(a), STATS., provides:

The burden of demonstrating by the preponderance of the evidence the amount of loss sustained by a victim as a result of the crime is on the victim. The district attorney is not required to represent any victim unless the hearing is held at or prior to the sentencing proceeding or the court so orders.

## BANKRUPTCY DISCHARGE

Sweat next argues that restitution should not have been ordered because a Texas bankruptcy court discharged the amounts he owed to the victims in January 1990. In *State v. Foley*, 142 Wis. 2d 331, 417 N.W.2d 920 (Ct. App. 1987), however, we relied upon *Kelly v. Robinson*, 479 U.S. 36 (1986), and the legislative history of § 973.09(1)(b), STATS.,[3] to hold that a restitution order is unaffected by bankruptcy proceedings. In *Foley*, the defendant's debts were discharged in bankruptcy and then he was ordered to repay those debts in restitution as part of his criminal sentence. *Id.* at 335, 417 N.W.2d at 922-23. In concluding that the restitution order was valid, we reasoned that the criminal justice system focuses on the offender as well as the victim and that ordering the offender to make restitution to his victim has a rehabilitative effect which is compatible with the bankruptcy court's "fresh start." *Id.* at 338, 417 N.W.2d at 924.

Sweat cites several cases from federal circuit and bankruptcy courts decided in or before 1986 in support of his position. However, federal decisions are not binding on state courts in Wisconsin. *Thompson v. Village of Hales Corners*, 115 Wis. 2d 289, 307, 340 N.W.2d 704, 712-13 (1983). We are bound only by the United

---

[3] Section 973.09(1)(b), STATS., provides:

> If the court places the person on probation, the court shall order the person to pay restitution under s. 973.20, unless the court finds there is substantial reason not to order restitution as a condition of probation. If the court does not require restitution to be paid to a victim, the court shall state its reason on the record. If the court does require restitution, it shall notify the department of justice of its decision if the victim may be eligible for compensation under ch. 949.

States Supreme Court on questions of federal law. *State v. Webster*, 114 Wis. 2d 418, 426 n.4, 338 N.W.2d 474, 478 (1983). Accordingly, we rely on *Foley* and *Kelly* and conclude that the trial court did not err when it concluded that the restitution order is unaffected by Sweat's bankruptcy proceedings.

## STATUTE OF LIMITATIONS

Finally, Sweat argues that the trial court erred when it concluded that a civil six-year statute of limitations was not applicable to this case. Instead, the court applied the criminal six-year statute of limitations, § 939.74, STATS., and determined that the cause of action was tolled when Sweat moved to Texas in April 1989. Thus, the court concluded that the criminal statute of limitations did not bar a claim for restitution on any transaction occurring after April 1, 1983.

Sweat asserts, however, that § 973.20(14)(b), STATS., provides that a defendant may assert in a restitution hearing any defense that he or she could have raised in a civil action for the loss sought to be compensated. He argues that a six-year statute of limitations to recover damages for the wrongful taking, conversion or detention of personal property is applicable to this case. Section 893.51, STATS.

To determine whether Sweat may raise a civil statute of limitation defense in a restitution hearing, we must construe § 973.20(14)(b), STATS.[4] Statutory con-

---

[4] In *Olson v. Kaprelian*, 202 Wis. 2d 377, 383-84, 550 N.W.2d 712, 715 (Ct. App. 1996), we also discussed § 973.20, STATS., and restitutionary awards. However, *Olson* considers the effect of § 973.20(8) in civil court, while we decide the effect of § 973.20(14)(b) in criminal court. Therefore, *Olson* is not relevant to our discussion.

struction is a question of law which we review *de novo*. *Minuteman, Inc. v. Alexander*, 147 Wis. 2d 842, 853, 434 N.W.2d 773, 778 (1989). Our primary purpose when interpreting a statute is to give effect to the legislature's intent. *Riverwood Park, Inc. v. Central Ready-Mixed Concrete, Inc.*, 195 Wis. 2d 821, 827, 536 N.W.2d 722, 724 (Ct. App. 1995). We first examine the language of the statute and if that language is clear and unambiguous, we apply its ordinary meaning. *Id.* at 828, 536 N.W.2d at 724.

The relevant portion of § 973.20(14)(b), STATS., provides: "The defendant may assert any defense that he or she could raise in a civil action for the loss sought to be compensated." The use of the word "any" is broad, unambiguous and is susceptible to one interpretation within the meaning of this statute: a defendant may assert all of the defenses available to a person during a civil trial in a restitution hearing, including relevant statutes of limitation. We conclude that § 893.51, STATS., is one such statute of limitations which is relevant to this case.

The State responds that civil statutes of limitation are not applicable in criminal cases and that the relevant criminal statute of limitations, § 939.74, STATS., applies. As a general matter, we would agree. But the restitution statute clearly states that *any* defense available to a defendant in a civil action may be asserted in the restitution hearing. This includes civil statutes of limitation.

Thus, we reverse the restitution order and remand this matter to the trial court for a fact-finding hearing on when the victims' causes of actions accrued, taking into consideration the application of the discovery rule, which applies to § 893.51, STATS. *See H.A. Freitag &*

*Son, Inc. v. Bush*, 152 Wis. 2d 33, 37, 447 N.W.2d 71, 73 (Ct. App. 1989). The trial court should also make factual findings and determine whether under § 893.19, STATS., and § 801.05, STATS., the causes of actions were tolled when Sweat moved to Texas.[5]

*By the Court.*—Judgment reversed and cause remanded with directions.

---

[5] Under § 893.19(1), STATS., a cause of action against a person who leaves the State of Wisconsin after a cause of action accrues is tolled during the period of time that person resides out of this State. But § 893.19(2) provides that tolling does not apply to persons who, while out of this state, may be subjected to the personal jurisdiction of the Wisconsin courts under § 801.05, STATS.