STATE of Wisconsin, Plaintiff-Respondent,

v.

Derrick L. MADLOCK, Defendant-Appellant.

Court of Appeals

*No. 98–2718–CR. Submitted on briefs June 29, 1999.—Decided September 1, 1999.*

(Also reported in 602 N.W.2d 104.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Margaret A. Maroney* assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general and *James M. Freimuth*, assistant attorney general.

Before Brown, P.J., Nettesheim and Anderson, JJ.

NETTESHEIM, J. Derrick L. Madlock appeals from an order denying his motion to vacate the restitution portion of a judgment of conviction for operating a motor vehicle without the owner's consent pursuant to § 943.23(3), STATS. Madlock argues that the trial court erred by refusing to conduct a restitution hearing. Madlock contends that a hearing was necessary because the record failed to sufficiently establish the fact of damage and, if damage existed, the necessary nexus to his crime. We agree. Consequently, we reverse the order of restitution and remand the matter to the trial court to conduct an evidentiary hearing on the restitution issue.

## FACTS

On November 11, 1997, the State filed a criminal complaint against Madlock charging him with operating a vehicle without owner's consent contrary to § 943.23(3), STATS.[1]

The facts as stated in the criminal complaint reveal that a vehicle, reported stolen to the City of Racine Police Department, was found parked along a street in Racine. In response, police officers set up surveillance around the vehicle. Within a short time, Madlock was observed entering the vehicle and moving it a short distance from the street to a driveway. The vehicle was stopped and Madlock was arrested.

At the preliminary hearing, Officer Kurt Maurer gave a more complete account of the underlying events. The vehicle in question had been stolen from the garage of a residence in Greenfield, Wisconsin, some-

---

[1] Madlock was also charged as a habitual offender pursuant to § 939.62(1)(b), STATS. The repeat offender charge was subsequently dropped under a plea agreement with the State.

time between four and six days earlier. Maurer determined through conversations with the owner that the vehicle had been left unlocked in her garage with the keys inside. Maurer also testified that he observed no window or steering column damage. In response to Maurer's questions, Madlock said that the first time he drove the vehicle was just prior to his arrest. He also stated that a friend named Kevin had asked him to move the vehicle.

Madlock entered a no contest plea to the charge, admitting that the facts as stated in the criminal complaint constituted a factual basis for his plea. After accepting Madlock's plea, the court scheduled sentencing and ordered a presentence report.

The first mention of restitution at the sentencing hearing was when the trial court ordered restitution. The court based the restitution order on a brief portion of the presentence report which recommended that restitution in the amount of $1602.90 be paid to the victim's insurer, an amount the victim said was paid to her for damage to her vehicle. Madlock objected, but the court confirmed the restitution order.

After sentencing, Madlock filed a motion to vacate the restitution order arguing that the brief reference in the presentence report did not sufficiently establish the fact of damage. In addition, Madlock argued that the record did not establish that the necessary nexus existed between the offense and the damage. Specifically, Madlock pointed to the fact that the vehicle had been taken four to six days before he was found driving it and there was no evidence that he had stolen it. He also noted that the record was devoid of any evidence of the nature of the damage or the repairs. Madlock further observed that the damage had never been mentioned in the criminal complaint, at the prelimi-

nary hearing, at the plea hearing or during the State's argument at sentencing.

The trial court denied Madlock's motion. The court stated that the victim was entitled to be made whole and it was within its discretion to order the restitution once the defendant was convicted of a crime. Madlock appeals.

## DISCUSSION

### 1. Waiver

We first address the State's claim of waiver. The State argues that Madlock waived his right to raise the issue on appeal because his objection to the restitution order in the trial court was incomplete. The State claims that Madlock objected to only the amount of restitution—not the fact of damage or that his conduct caused the damage.

When the trial court ordered restitution, Madlock's attorney responded, "[W]e'd state our objection to the order for restitution, Your Honor, and reserve [Madlock's] right to challenge that if he disagrees with the amount." Whether an objection was adequate to preserve an issue for appeal requires this court to apply a set of facts to a legal standard. *See State v. Agnello*, 226 Wis. 2d 164, 172, 593 N.W.2d 427, 430 (1999). This is a question of law that we review independently of the legal determinations rendered below. *See id.* Here, while Madlock's objection was not as broadly stated as it could have been, we conclude that the State's argument is too technical in the real world of contemporaneous objections. Madlock and his attorney were taken by surprise with the restitution order because there had been no previous mention of it with the exception of the brief reference in the

presentence report. Nor had the State requested restitution at the plea or sentencing hearings.

While the objection could be taken to mean that Madlock was objecting only to the amount of the restitution, his words could also be taken to mean that no amount of restitution should be ordered either because the damage had not been established or because his conduct had not produced the damage. We also note that when the trial court revisited the issue at the postconviction motion hearing, neither the State nor the trial court indicated that Madlock had waived his challenge. Instead, both the State and the court addressed the issue on its merits. We reject the State's waiver argument.

## 2. The Merits

A request for restitution is addressed to the trial court's discretion. *See State v. Anderson*, 215 Wis. 2d 673, 677, 573 N.W.2d 872, 873 (Ct. App. 1997), *review denied*, 217 Wis. 2d 522, 580 N.W.2d 691 (1998). Such decisions should only be disturbed when there has been an erroneous exercise of that discretion. *See id.* However, when a court exercises discretion under an erroneous view of the law, a misuse of discretion has occurred. *See State v. Hutnik*, 39 Wis. 2d 754, 763, 159 N.W.2d 733, 737 (1968).

The operating without owner's consent statute has its own restitution provision. *See* § 943.23(6)(b), STATS.[2] Thus, we must first decide how this provision

[2] Section 943.23(6)(b), STATS., states:

In addition to the other penalties provided for violation of this section, a judge may require a violator to pay restitution to or on

relates to the general restitution statute, § 973.20, STATS. Our duty is to construe statutes on the same subject matter in a manner that harmonizes them and gives each full force and effect. *See State v. Aaron D.*, 214 Wis. 2d 56, 66, 571 N.W.2d 399, 404 (Ct. App. 1997).

In this case, both parties analyze the question under the general restitution statute, § 973.20, STATS. We will do likewise because we see no conflict between the two statutes despite certain differences in language. Both statutes deal with the same topic, seek the same goals, recite similar factors bearing on restitution and provide for an evidentiary hearing if necessary. Moreover, the case law on restitution has developed under § 973.20.

Next, we set out the competing positions of the parties. Madlock argues that the record in this case fails to establish a causal connection between his crime and the damage to the vehicle. His argument is based on language within the general restitution statute that directs the court to order restitution to any victim of "a crime considered at sentencing." *See* § 973.20(1r), STATS. Based on this language, Madlock reasons that his crime was driving a stolen vehicle, which took place in a confined area over a short period of time. He asserts that no damage occurred in moving the vehicle a short distance between the street and the driveway, thereby implying that any damage must have occurred

behalf of a victim regardless of whether the violator is placed on probation under s. 973.09. If restitution is ordered, the court shall consider the financial resources and future ability of the violator to pay and shall determine the method of payment. Upon the application of any interested party, the court may schedule and hold an evidentiary hearing to determine the value of the victim's pecuniary loss resulting from the offense.

in the four to six days between the theft of the vehicle and when he actually drove it.

Madlock further argues that the record contains insufficient evidence to prove the existence of damage to the vehicle in the first instance. His argument here is based on language within § 973.20(5)(a), STATS., which provides in part that a restitution order may require the defendant to "[p]ay all special damages . . . substantiated by evidence in the record." In support, Madlock cites to the fact that Maurer testified that the vehicle was stolen using the keys that were left inside and that he observed no damage to the vehicle. Madlock also cites to the prosecutor's following statement at the postconviction motion hearing when the trial court asked for the State's position on the matter:

> Well, this is kind of a tricky situation. It always is when it's a situation where a person initially steals a car and then it's passed on to somebody else. Now, this car was being operated with keys, from what I can tell. So apparently the steering column wasn't broken. I suspect that that would mean that a window wasn't broken either. So I suspect the damage was a result of probably people abusing the car but I don't know. We had nothing in the police reports that there was any damage to the car whatsoever.
>
> The presentence report shows that American Family paid $1,600. So I'm really at a loss to even take a position as to whether it's appropriate in this case at this point.

Finally, Madlock points to the trial court's statement at the motion hearing that there was "a void of information here with respect to what the damage is that was claimed."

331

The State responds by pointing to the underlying purpose behind the restitution statutes and then citing some well-accepted general principles on the matter of restitution. The two main ideas in the State's argument are that restitution provisions are victim oriented and should be construed broadly toward that end and that a restitution determination is an informal proceeding where strict rules of evidence and normal burdens of proof do not apply. While we agree with these statements of the law and will cite to them later, we do not agree that they form a sufficient basis to uphold the restitution order in this case under the existing state of the record.

■

We begin our analysis by first looking to § 973.20(1r), STATS., which says that restitution should be ordered for the benefit of "any victim of a crime considered at sentencing." Further, a "crime considered at sentencing" is defined in the statutes as "any crime for which the defendant was convicted." Section 973.20(1g)(a). The primary purpose of restitution is not to punish the defendant, but to compensate the victim. *See State v. Sweat*, 208 Wis. 2d 409, 422, 561 N.W.2d 695, 700 (1997). Section 973.20 "reflects a strong equitable public policy that victims should not have to bear the burden of losses if the defendant is capable of making restitution." *See State v. Kennedy*, 190 Wis. 2d 252, 258, 528 N.W.2d 9, 11 (Ct. App. 1994). We are to construe the restitution statute "broadly and liberally in order to allow victims to recover their losses as a result of a defendant's criminal conduct." *Anderson*, 215 Wis. 2d at 682, 573 N.W.2d at 875. As such, the trial court must order restitution "unless it finds substantial reason not to do so and states the reason on the record." *See State v. Borst*, 181 Wis. 2d 118, 122, 510 N.W.2d

739, 741 (Ct. App. 1993); § 973.20(1r). We read the statute and this case law to say that restitution is the rule and not the exception and that restitution should be ordered whenever warranted.

This court has previously spoken about the nexus that must be present between the crime committed and the damage to be compensated. In *State v. Behnke*, 203 Wis. 2d 43, 553 N.W.2d 265 (Ct. App. 1996), we held that in proving causation, a victim need only show that the defendant's criminal activity was a "substantial factor" in causing damage. *See id.* at 59, 553 N.W.2d at 273 (upholding the trial court's award of restitution for counseling services for victim after being imprisoned, battered and sexually assaulted by the defendant). The victim need only show that "the defendant's actions were the precipitating cause of the injury" and that it was "the natural consequence of the actions." *See id.*

The State correctly notes that "crime" as used in the restitution statute is properly understood as "encompassing all facts and reasonable inferences concerning the defendant's activity related to the 'crime' for which the defendant was convicted, not just those facts necessary to support the elements of the specific charge of which the defendant was convicted." We agree, and we previously said as much in *State v. Rodriguez*, 205 Wis. 2d 620, 627, 556 N.W.2d 140, 142 (Ct. App. 1996):

> Under the restitution statute, the sentencing court takes a defendant's entire course of conduct into consideration. The restitution statute does not empower the court to break down the defendant's conduct into its constituent parts and ascertain whether one or more parts were a cause of the victim's damages.

333

However, considering Madlock's entire course of conduct and drawing all reasonable inferences from that conduct, we cannot agree with the State's contention that Madlock's conduct was sufficiently linked to the claimed damage.[3] Nor can we agree with the trial court's reasoning on this question. It appears that the court believed that because Madlock's crime involved the vehicle and because the victim was entitled to be made whole, Madlock was ipso facto responsible for restitution. We agree that in most cases the facts in support of the criminal conviction, coupled with the statutory presumption of restitution, will allow for a restitution order. But each case must turn on its own facts. This is one of the rare cases where that result does not automatically follow.

Section 973.20(2), STATS., lays out what a restitution order can require if "a crime considered at sentencing *resulted in damage* to or loss or destruction of property." (Emphasis added.) This language shows that for a restitution order to be appropriate, the crime must have some nexus to the damage. This idea is similarly conveyed in § 973.20(13)(a), which states that one of the factors that must be considered by the trial court in ordering restitution is the "amount of loss suffered by any victim *as a result of* a crime considered at sentencing." (Emphasis added.) Another subsection states that a defendant can be ordered to "[p]ay all special damages . . . *substantiated by evidence in the record*" for "*conduct in the commission of a crime.*" Section 973.20(5)(a) (emphasis added). Finally, we note that the operating without owner's consent statute also envisions "the victim's pecuniary loss *resulting* from

---

[3] The State reasons that Madlock's conduct was sufficiently linked to the damage because he was observed driving the stolen vehicle and had been convicted of similar crimes before.

334

the offense." Section 943.23(6)(b), STATS. (emphasis added).

Both the general restitution statute and the operating without owner's consent statute provide for an evidentiary hearing when a person ordered to pay restitution wishes to contest the appropriateness of the restitution order. *See* §§ 973.20(13)(c), 943.23(6)(b), STATS. These statutes also discuss the factors that bear upon the restitution question and the mechanisms for contesting the amount. Subdivisions 2 through 4 of § 973.20(13)(c) lay out different mechanisms for resolving any disputes over the amount of restitution if the damages are not stipulated to or cannot be "fairly heard at sentencing." Additionally, § 973.20(14)(d) states that "[a]ll parties interested in the matter shall have an opportunity to be heard, personally or through counsel, to present evidence and to cross-examine witnesses called by other parties."

Although these statutes speak to the amount of the restitution, we construe them to also apply to a situation where the propriety of restitution is challenged in the first instance. It would make no sense to construe the statute as permitting only a challenge to the amount of restitution, but not to the underlying fact of the damage itself or the causation question. We are to construe statutes to avoid absurd or unreasonable results. *See State v. Clausen*, 105 Wis. 2d 231, 245, 313 N.W.2d 819, 826 (1982).

It is also clear, however, that the nature of the hearing is informal. A restitution hearing is not a full-blown civil trial as evidenced by the dispensing of the normal rules of evidence. *See State v. Pope*, 107 Wis. 2d 726, 729, 321 N.W.2d 359, 361 (Ct. App. 1982); § 973.20(14)(d), STATS. Normal rules of practice, procedure and pleading are also waived. *See* § 973.20(14)(d).

By statute, the victim carries the burden of proving the amount of loss sustained as a result of the crime by a preponderance of the evidence. *See* § 973.20(14)(a). The defendant, however, has the burden of proving his or her financial resources and ability to pay, or lack thereof, by a preponderance of the evidence. *See* § 973.20(14)(b). All of this is with an eye toward doing "substantial justice between the parties." *See* § 973.20(14)(d).

In the present case, the requisite evidentiary basis for the restitution order is currently lacking. First, the record is skeletal as to the actual fact of damage—a situation acknowledged by the trial court. Second, the record is insufficient to show the necessary nexus between Madlock's criminal conduct and the claimed damage. At the postconviction motion hearing, Madlock's attorney asked for an evidentiary hearing on these questions. In light of the meager evidence on this issue, we conclude that the trial court erred in the exercise of its discretion when it denied this request.

Our holding does not change the existing state of restitution law. The restitution statutes remain victim oriented. We simply uphold existing law that says an order for restitution must be supported by evidence in the record. This requires that damage in the first instance be established and that there be some nexus between the damage and the offender's conduct. An offender cannot escape responsibility for restitution simply because his or her conduct did not directly cause the damage. If damage results from a criminal episode in which the defendant's conduct played only a small and isolated part, the defendant is nonetheless properly held to pay restitution on a joint and several basis.

This is so, even if the defendant had no knowledge of, or complicity in, the event that resulted in the damage.

## CONCLUSION

The present record in this case does not sufficiently establish the fact or nature of the damage in the first instance or the nexus between such possible damage and Madlock's conduct. An evidentiary hearing is necessary as to both of these inquiries. We reverse the restitution order and remand for an evidentiary restitution hearing.

*By the Court.*—Order reversed and cause remanded.