STATE of Wisconsin, Plaintiff-Respondent,

v.

Freeman CANADY, Defendant-Appellant.

Court of Appeals

*No. 99–1457–CR. Submitted on briefs December 17, 1999.—Decided March 8, 2000.*

## 2000 WI App 87

(Also reported in 610 N.W.2d 147.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Charles Bennett Vetzner*, assistant state public defender, of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *William C. Wolford*,

assistant attorney general, and *James E. Doyle*, attorney general.

Before Brown, P.J., Anderson and Snyder, JJ.

¶ 1. SNYDER, J. Freeman Canady appeals from multiple convictions for various crimes relating to his burglary of an apartment building in Racine. The only issue on appeal is the amount of restitution Canady is obligated to pay as a result of the burglary. Canady argues that he should not be liable for damage to an apartment door that was caused by a police officer who was attempting to detain and arrest him. We conclude that in resisting arrest, Canady's criminal behavior was a substantial factor in causing the property damage. We therefore affirm the circuit court's award of restitution.

¶ 2. The facts are undisputed. On October 4, 1998, at approximately 2:30 a.m., City of Racine Police Officers J.S. Bebow and T.I. Frost responded to a complaint about a suspected burglary in an apartment building. Upon arriving at the building, the officers opened the rear exit door and observed Canady coming up the stairs from the basement. The officers informed Canady that he was being arrested and that he should place his hands behind his back. When Bebow attempted to handcuff him, Canady resisted and attempted to pull his arms in front of himself and away from the officer. Canady was advised to stop resisting, but he persisted. Bebow then escorted him to the ground, at which point Canady moved his arms in front of his body and lay on top of them. Canady was again instructed to place his hands behind his back. While attempting to secure Canady's body on the ground, Bebow observed a pry bar in the inside pocket of

Canady's jacket, near his hands. Then, according to Bebow:

> I felt that Canady was attempting to grab the pry bar to use it as a weapon. I was able to pull the pry bar away from Canady's jacket, and I tossed it out of reach of Canady's immediate area. When I did this, the pry bar struck the rear exit door to the complex building, cracking the glass door pane.

The officers then arrested him.

¶ 3. Canady was charged with four counts relating to the burglary, including intentional burglary of a building, possession of burglarious tools, criminal damage to property and resisting arrest.[1] Canady pled no contest to the charges.

¶ 4. At sentencing, Canady objected to the State's claim that he was liable for $225.99 to replace the rear exit door of the apartment building that was damaged in the burglary.[2] He contended that the door, rather than being damaged by him in the burglary, was cracked because of the actions of the arresting officers. The circuit court rejected Canady's contention, determining that he was required to make restitution for the door.

¶ 5. On appeal, Canady asserts that a criminal defendant should not be obligated to pay restitution for property damaged by police officers while attempting to detain and arrest the defendant. Canady argues that the criminal activity for which he faced sentencing did not result in the harm at issue. We disagree.

---

[1] Canady was also charged with possession of drug paraphernalia.

[2] Canady did not dispute his obligation to pay $324 in property damage to repair a washing machine coin box that he had attempted to break into.

¶ 6. In disputes concerning the calculation of criminal restitution, we address whether the circuit court misused its discretionary authority. *See State v. Behnke*, 203 Wis. 2d 43, 57, 553 N.W.2d 265 (Ct. App. 1996). We may reverse a discretionary decision only if the circuit court applied the wrong legal standard or did not ground its decision on a logical interpretation of the facts. *See id.* at 58.

¶ 7. Criminal restitution is governed by WIS. STAT. § 973.20 (1997–98),[3] which imposes a duty on the sentencing court to order restitution to the victim of a crime.[4] Subsection (2) reads in pertinent part:

> If a *crime considered at sentencing resulted in damage* to or loss or destruction of property, the restitution order may require that the defendant:
> . . . .
> **(b)** . . . pay the owner . . . the reasonable repair or replacement cost. . . . (Emphasis added.)

¶ 8. This court recently had occasion to address the nature of criminal restitution in *State v. Madlock*, 230 Wis. 2d 324, 329–37, 602 N.W.2d 104 (Ct. App. 1999). There, we noted that the primary purpose of restitution is not to punish the defendant, but to com-

---

[3] All references to the Wisconsin Statutes are to the 1997–98 version.

[4] WISCONSIN STAT. § 973.20(1r) provides:

When imposing sentence or ordering probation for any crime for which the defendant was convicted, the court, in addition to any other penalty authorized by law, shall order the defendant to make full or partial restitution under this section to any victim of a crime considered at sentencing . . . unless the court finds substantial reason not to do so and states the reason on the record.

pensate the victim. *See id.* at 332. The restitution statute "reflects a strong equitable public policy that victims should not have to bear the burden of losses if the defendant is capable of making restitution." *Id.* (quoting *State v. Kennedy*, 190 Wis. 2d 252, 258, 528 N.W.2d 9 (Ct. App. 1994)). We should interpret the statute "broadly and liberally in order to allow victims to recover their losses as a result of a defendant's criminal conduct." *Id.* (quoting *State v. Anderson*, 215 Wis. 2d 673, 682, 573 N.W.2d 872 (Ct. App. 1997)). We additionally observed that "restitution is the rule and not the exception and that restitution should be ordered whenever warranted." *Id.* at 333.

¶ 9. Before restitution can be ordered, a causal nexus must be established between the "crime considered at sentencing," WIS. STAT. § 973.20(2), and the disputed damage. *See Madlock*, 230 Wis. 2d at 333. In proving causation, a victim must show that the defendant's criminal activity was a "substantial factor" in causing damage. *See id.* The defendant's actions must be the "precipitating cause of the injury" and the harm must have resulted from "the natural consequence[s] of the actions." *Id.* (quoting *Behnke*, 203 Wis. 2d at 59).

¶ 10. As contemplated by the restitution statute, the "crime considered at sentencing" is defined in broad terms. As we set forth in *Madlock*, the "crime" encompasses "all facts and reasonable inferences concerning the defendant's activity *related to* the 'crime' for which the defendant was convicted, not just those facts *necessary* to support the elements of the specific charge of which the defendant was convicted." *Id.* The sentencing court should consider the defendant's "entire

course of conduct." *Id.* (quoting *State v. Rodriguez*, 205 Wis. 2d 620, 627, 556 N.W.2d 140 (Ct. App. 1996)).

¶ 11. In the present case, Canady's criminal activity involved more than burglary; he was convicted of resisting an officer pursuant to WIS. STAT. § 946.41(1). As the officers attempted to arrest Canady, he put forth quite a struggle despite repeated warnings to stop. After Bebow was compelled to escort Canady to the ground because he would not acquiesce, Bebow observed a pry bar in Canady's pocket which Canady was attempting to grab. Bebow responded by grabbing the pry bar from Canady's pocket and tossing it aside. The pry bar hit the rear exit door, cracking the glass door pane.

¶ 12. In its decision, the circuit court ruled that "the damage was caused inevitably by Mr. Canady, although he was not the actor or the direct actor here." We are satisfied that the court properly exercised its discretion. Based on Canady's violent behavior in resisting the officers and the fact that he was carrying a metal pry bar that could have been used as a weapon, there is little doubt that his actions precipitated the property damage here. While damaging the glass door pane may not have been intended or expected on Canady's part, the natural consequences of grabbing for a metal pry bar while resisting arrest was that he would be disarmed. Canady's actions were a substantial factor in causing the resultant damage because, "but for" his burglary and resisting arrest, the property damage would not have occurred. Although Bebow's tossing of the pry bar may qualify as the immediate or direct cause, *see State. v. Miller*, 231 Wis. 2d 447, 456–57, 605 N.W.2d 567 (Ct. App. 1999), *review denied*, 233 Wis. 2d 84, 609 N.W.2d 473 (2000), Canady was

only one step removed in the chain of causation. We are convinced that Canady's criminal actions were not too remote to constitute a substantial factor in causing the property damage. *See State v. Serebin,* 119 Wis. 2d 837, 849, 350 N.W.2d 65 (1984).

 *By the Court.*—Judgments affirmed.