ANN WALSH BRADLEY, J. (concurring).
¶48 Although I agree with the majority's conclusion that N.D. is entitled to recover restitution in the amount of $8,487.41, I do not join its analysis. I part ways with the majority because it misreads the record and anchors its analysis on a skewed focus of the circuit court's factual findings.
¶49 The majority misreads the record by asserting that "there was no evidence presented that any of the items comprising the amount for which restitution was ordered were stolen from N.D.'s home on any date other than May 8." See majority op., ¶33.
¶50 Neither the State nor Wiskerchen argued in support of the majority's view of the record. Likewise, *142 neither the circuit court nor the court of appeals subscribed to such an approach.
¶51 Rather, the testimony in the circuit court supports a contrary assertion, i.e., some of the property likely was stolen on dates prior to May 8. Accordingly, the circuit court found "that there is a nexus between Mr. Wiskerchen's conduct and the victim's loss, and I find that the victim has met her burden of proof."
¶52 With the actual facts of record and complete circuit court finding in hand, I would affirm the court of appeals. Relying on our prior case law, I conclude that where a circuit court makes specific factual findings regarding uncharged conduct that is "related to" the crime of conviction, and there is a causal nexus between the conduct and the loss, restitution is permissible for uncharged conduct. Accordingly, I respectfully concur.
I
¶53 The circuit court determined that N.D. was entitled to restitution. It arrived at this determination by explicitly referencing Wiskerchen's alleged prior burglaries, how he had been in the victim's home many times, and that he built a "nest" in her closet. The circuit court further referenced Wiskerchen's practice of pawning stolen goods in Illinois. From this evidence, *742 the circuit court actually found "that there is a nexus between Mr. Wiskerchen's conduct and the victim's loss, and I find that the victim has met her burden of proof" (emphasis added).
¶54 The majority focuses on the second half of the circuit court's statement while ignoring the first. It criticizes Wiskerchen for "misread[ing] what the circuit court decided" and concludes that "no evidence *143 was presented at the restitution hearing to support a finding that N.D.'s missing property was stolen on any date other than May 8, which was the burglary considered at sentencing." Majority op., ¶2.
II
¶55 Such an assertion is backwards. It is the majority, and not Wiskerchen, that "misreads what the circuit court decided."
¶56 A finding that all of the stolen property was taken on May 8 is contrary to the evidence in this record. There was testimony that Wiskerchen used a chisel to gain access to N.D.'s home through a storm window and that he repeatedly entered and exited in such a fashion. The record reflects that N.D. claimed the loss of over 100 items, including a video game system, several coats, a case of wine, dishes, a microwave, a crockpot, and a printer. Further, the record reflects that Wiskerchen was carrying only a backpack during the course of the May 8 burglary. When asked if Wiskerchen could have fit all of the lost items in his backpack, N.D. responded, "Not on that day. It was many days that he was in my house."
¶57 Neither Wiskerchen nor the State argued that every item was stolen on May 8. From the testimony, the circuit court understandably determined that there was a nexus between Wiskerchen's prior conduct and the May 8 burglary and ordered restitution accordingly.
¶58 Rather than embrace the factual and analytical missteps of the majority, I would affirm the court of appeals based on restitution principles and statutory interpretation gleaned from prior case law.
¶59 Restitution is governed by Wis. Stat. § 973.20. Pursuant to Wis. Stat. § 973.20(2)(b), "[i]f a *144 crime considered at sentencing resulted in damage to or loss or destruction of property, the restitution order may require that the defendant ... pay the owner or owner's designee the reasonable repair or replacement cost" of the property lost. A "crime considered at sentencing" is defined by statute as "any crime for which the defendant was convicted and any read-in crime." Wis. Stat. § 973.20(1g)(a).
¶60 We are to interpret the restitution statute "broadly and liberally in order to allow victims to recover their losses as a result of a defendant's criminal conduct." State v. Gibson, 2012 WI App 103, ¶10, 344 Wis. 2d 220, 822 N.W.2d 500. The restitution statute "reflects a strong equitable public policy that victims should not have to bear the burden of losses if the defendant is capable of making restitution." State v. Kennedy, 190 Wis. 2d 252, 258, 528 N.W.2d 9 (Ct. App. 1994).
¶61 In State v. Rodriguez, the court of appeals established that a sentencing court is to take into account "a defendant's entire course of conduct" in determining an award of restitution. 205 Wis. 2d 620, 627, 556 N.W.2d 140 (Ct. App. 1996). Accordingly, we broadly define what constitutes a "crime considered at sentencing" for which restitution may be ordered. See Wis. Stat. § 973.20(1g)(a) ; State v. Canady, 2000 WI App 87, ¶10, 234 Wis. 2d 261, 610 N.W.2d 147.
¶62 The term "crime" "as used in the restitution statute is properly understood as 'encompassing all facts and reasonable inferences concerning the defendant's activity *743 related to the "crime" for which the defendant was convicted, not just those facts necessary to support the elements of the specific charge of which the defendant was convicted.' " State v. Madlock, 230 Wis. 2d 324, 333, 602 N.W.2d 104 (Ct. App. 1999). *145 Before restitution may be ordered, a causal nexus must be established between the "crime considered at sentencing" and the damage for which restitution is ordered. Canady, 234 Wis. 2d 261, ¶9, 610 N.W.2d 147. In proving causation, the victim must demonstrate that the defendant's criminal activity was a substantial factor in causing the damage. Id.
¶63 Relying on our prior case law, I conclude that where a circuit court makes specific factual findings regarding uncharged conduct that is "related to" the crime of conviction, and there is a causal nexus between the conduct and the loss, restitution is permissible for uncharged conduct. See Rodriguez, 205 Wis. 2d at 627, 556 N.W.2d 140 ; Madlock, 230 Wis. 2d at 333, 602 N.W.2d 104 ; Canady, 234 Wis. 2d 261, ¶9, 610 N.W.2d 147. The requirement of specific factual findings serves a dual purpose. First, it provides a safeguard to defendants so as to not hold them financially responsible for losses that may have occurred to victims not as a result of the defendants' conduct. Second, it avoids an unreasonable result that would leave a crime victim with no restitution for the sole reason that the victim is unable to prove which items were taken on any specific day. See State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶46, 271 Wis. 2d 633, 681 N.W.2d 110 (explaining that statutory language is to be interpreted "reasonably, to avoid absurd or unreasonable results").
¶64 Here, the circuit court made such specific factual findings. Citing the presentence investigation report, the circuit court found that:
• "[Wiskerchen] stated that he had burglarized between one hundred to two hundred homes and had never been caught."
• "He further told the PSI writer that he would take the items that he stole to the state of Illinois where *146 he knew a guy who would pawn the stolen goods and would not ask for identification."
• "[The victim] told the PSI writer how Mr. Wiskerchen's mother told her how the defendant had been in her home many times prior to actually being caught."
• "[The victim] also reported to the PSI writer how she had discovered that the defendant made what she referred to as a nest in the back of her closet where she discovered liquor bottles, and it appeared that he had hid out during the day when she was at work...."
• "Based on the record, I find that there is a nexus between Mr. Wiskerchen's conduct and the victim's loss...."
¶65 These factual findings describe a course of conduct that is "related to" the May 8 burglary. The course of conduct described is "related to" the May 8 burglary because it involves the same house where Wiskerchen created a "nest" in the closet and appeared to hide out during the day, the same victim, and the same mode of entry. See State v. Queever, 2016 WI App 87, ¶22, 372 Wis. 2d 388, 887 N.W.2d 912. Consequently, in my view restitution is appropriate.
¶66 In sum, I agree with the majority that N.D. is entitled to $8,487.41 in restitution. However, I do not join the majority's reasoning because it misreads the record and bases its analysis on a skewed focus of the circuit court's findings of fact. Accordingly, I respectfully concur.
¶67 I am authorized to state that Justice SHIRLEY S. ABRAHAMSON joins this concurrence.